IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PHILIPS ELECTRONICS NORTH AMERICA CORPORATION et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BC TECHNICAL,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:08-cv-639 CW-SA<br><br>Judge Clark Waddoups<br><br>Magistrate Judge Samuel Alba |

## INTRODUCTION

This case was assigned to United States District Court Judge Clark Waddoups, who then referred it to United States Magistrate Samuel Alba under 28 U.S.C. § 636(b)(1)(B). On July 28, 2010, Judge Alba issued a Report and Recommendation that addressed three motions filed by Plaintiffs:[1] (1) Plaintiffs' Motion for Spoliation Sanctions; (2) Plaintiffs' Motion for Order Holding Defendant in Contempt of Court; and (3) Plaintiffs' Second Motion for Spoliation Sanctions and for Order Holding Defendant in Contempt of Court. Defendant is BC Technical ("BCT").

Based on the evidence, Judge Alba recommended "that the court strike BCT's answer, dismiss BCT's counterclaims, and enter default judgment as to liability in Philips' favor."[2] Judge Alba further recommended that this case be referred to the United States Attorney's Office for investigation and criminal prosecution. BCT objected to Judge Alba's recommendation and

---

[1] The plaintiffs in this case are Philips Electronics North America Corporation, Koninklijke Philips Electronics NV, and Philips Medical Systems (Cleveland), Inc.

[2] Report and Recommendation, 117 (Dkt. No. 284).

Plaintiffs filed a reply on August 28, 2010. The court has reviewed the matter *de novo* and hereby approves and adopts these recommendations for the reasons stated below. This ruling, however, does not apply to MSouth Equity Partners because that entity was not a party in this case.

## ANALYSIS

Judge Alba's Report and Recommendation is thorough and carefully reasoned. Accordingly, the court need not repeat the detailed factual background and legal reasoning that led to his recommendations. The court issues this decision largely to address issues raised in BCT's Objection to Judge Alba's recommendation. BCT does not deny that it engaged in discovery violations. Nevertheless, it contends that Judge Alba's recommendation for terminating sanctions is harsh and unwarranted given the facts of this case. It argues that BCT cannot be responsible for the actions of five of its employees because BCT had no pattern of spoliation. It further argues that BCT was merely following the advice of its counsel, and that any prejudice arising from spoliated evidence has been largely remedied.

**I.      EHRENHAUS FACTORS**

As noted by Judge Alba "[d]ismissal is an extreme sanction which is only appropriate in cases involving willful misconduct."[3] Accordingly, he appropriately walked through the following five factors to determine the correct sanction for BCT's spoliation of evidence:

> (1) the degree of actual prejudice to the [non-culpable party]; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance;

---

[3] *Id.* at 77 (citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992)).

and (5) the efficacy of lesser sanctions.[4]

### A. Prejudice

BCT contends any prejudice to Plaintiffs has been largely remedied because it has located and produced most of the files that were deleted. Accordingly, it argues that the monetary award of attorney fees and costs to deal with the spoliated evidence, as well as giving an "adverse inference instruction for the small percentage of documents that were deleted" and cannot be recovered should be sufficient.[5]

Focusing on the percentage of documents produced versus the percentage of documents irretrievably destroyed masks that BCT destroyed at least 17,800 documents that were central to this litigation. To say that any prejudice has been largely remedied ignores that a case can turn on only a few key documents. Due to the destruction of 17,800 central documents, there is no way to place Plaintiffs in the position they would have had at trial if BCT had not spoliated the evidence. The court therefore concludes that Plaintiffs are prejudiced as a result of BCT's actions.

### B. Interference with the Judicial Process

BCT further contends that the amount of interference in the judicial process does not warrant the recommended sanction. In particular, BCT contends Rule 37 is not meant to be punitive. Plaintiffs argue the opposite and further argue they also moved for sanctions based on the court's inherent ability to sanction discovery abuses.

When a party fails to comply with a court order to produce documents, Rule 37 expressly

---

[4] *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1179 (10th Cir. 2009) (citing *Ehrenhaus*, 965 F.2d at 920–21)).

[5] Objection to Report and Recommendation, 12–13 (Dkt. No. 291) (hereinafter "Objection").

permits striking pleadings, dismissing an action, and entering default.[6] To argue these sanctions are punitive, and therefore not permitted, ignores Rule 37's plain language. Moreover, BCT did not merely refuse to produce documents. It intentionally destroyed documents and attempted to cover-up the electronic deletions within hours after Judge Alba granted Plaintiffs' *third* motion to compel. BCT then compounded the problem by misrepresenting information about the issue while under oath. These actions constitute an egregious form of interference with the judicial process. Because the degree of interference was significant, harsh sanctions are appropriate.

### C. Culpability

Next, BCT contends its counsel and a handful of its employees are the ones culpable—not it.[7] Culpability may arise through responsibility and control of an actor or situation.[8] "Since a [company] is only a legal entity, it cannot act or have a mental state by itself."[9] Thus, the "practical reality" is that companies "can only act through their [officers, employees, and agents]."[10] In this case, the individuals who destroyed evidence were not low-level employees. Rather they were largely upper management and executives at BCT. Moreover, after documents were destroyed, BCT's founder and Chief Executive Transition Officer, its Chief Technical Officer, and its Chief

---

[6] Fed. R. Civ. P. 37(b)(2)(A)(iii), (v)–(vi) (2010).

[7] The court takes no position on whether BCT's counsel acted negligently because BCT's allegation of malpractice is not before the court.

[8] *See Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.*, 621 F. Supp. 2d 1173, 1193 (D. Utah 2009).

[9] *Magnum Foods v. Continental Casualty Co.*, 36 F.3d 1491, 1499 (10th Cir. 1994) (citation omitted)

[10] *Keys Youth Servs. v. City of Olathe*, 248 F.3d 1267, 1271 n.3 (10th Cir. 2001); *see also Magnum*, 36 F.3d at 1499.

Operating Officer lied about their actions under oath. To argue that these employees acted independently and therefore BCT cannot be culpable for their actions is simply not credible.

### D. Warning about Dismissal

BCT also argues that the sanctions are inappropriate because Judge Alba failed to warn it that discovery abuses could result in dismissal. An explicit warning that dismissal is likely "is not a prerequisite to the imposition of dismissal sanctions."[11] BCT had already been before Judge Alba on other discovery abuses. It had been ordered three times to produce documents. Based on the case's procedural background, case law, Rule 37, and the court's inherent authority to deal with a party's violation of a court order, the recommended sanctions should come as no surprise to BCT. Accordingly, the court concludes that an explicit warning was unnecessary given the totality of the circumstances in which BCT's actions arose.

### E. Efficacy of Lesser Sanctions

BCT contends that lesser sanctions are appropriate for the following reasons.

#### 1. Relevance of Documents

BCT argues that a lesser sanction is appropriate because the deleted documents were not relevant to Plaintiffs' trademark claim. In particular, BCT contends "there is no evidence that the lost documents would be material or relevant to Philips' trademark claim, which relate [sic] to BCT's external advertising and marketing practices."[12] The court disagrees with BCT's characterization of this cause of action. In Plaintiffs' Amended Complaint, Plaintiffs assert that BCT acted "with the willful and calculated intent of causing confusion and of trading unlawfully on

---

[11] *Garcia*, 569 F.3d at 1180 (10th Cir. 2009) (citation omitted).

[12] Objection, 19 (Dkt. No. 291).

Philips' good will and reputation."[13]  Thus, BCT's internal actions were as relevant as its external advertising and marketing practices.  The destroyed documents may have therefore contained relevant evidence to this cause of action.  Moreover, it is not for the spoliator to determine what documents are relevant.[14]  Merely asserting the documents were not relevant to a cause of action is insufficient to show a lesser sanction should be imposed.

### 2. Predatory Hiring Claim

BCT also contends the court should not enter judgment in Plaintiffs' favor on the "predatory hiring" claim for two reasons.  First, BCT contends the destroyed documents were not relevant to the claim.  Again, however, it is not for the spoliator to determine what documents are relevant.  Additionally, BCT made it impossible for Plaintiffs to review the destroyed documents and determine whether they supported this claim.  BCT cannot reap the benefits of its actions by stating there is no evidence of relevance when it destroyed the very evidence needed to make such a determination.

Second, BCT contends it has moved for summary judgment on Plaintiffs' predatory hiring claim because Plaintiffs cannot prevail as a matter of law on it.  To support this assertion, BCT quotes "Utah Code § 13-5a-102(4)(b):  unfair competition does not include the departure and hiring of an employee by a competitor."[15]  This argument is troubling because it ignores the statutory language that precedes the quoted language, namely, predatory hiring practices do constitute unfair competition.  In Plaintiffs' opposition to summary judgment, they cite evidence to show that BCT

---

[13] Amended Complaint, ¶ 62 (Dkt. No. 25).

[14] *See Goodman v. Praxair Servs. Inc.*, 632 F. Supp. 2d 494, 517 n.12 (D. Md. 2009).

[15] Objection, 20 (Dkt. No. 291) (quotation marks omitted).

"preyed" upon Plaintiffs' employees so BCT could obtain trade secret information. It is unknown what other documents among the 17,800 that were destroyed may also have helped prove this claim. Based on the evidence that has been provided, however, BCT's contention that Plaintiffs could not prevail on this claim as a matter-of-law is not supported.

### 3. Other Claims

BCT further asserts that Plaintiffs cannot prevail as a matter of law on other claims due to statute of limitations issues and defenses under the "first sale doctrine" and "repair exception." With respect to the statute of limitations, issues of fact exist due to the discovery rule. The same holds true regarding BCT's defenses. Moreover, it is questionable whether BCT could even prevail on its defenses under the "first sale doctrine" and "repair exception." BCT cannot avoid sanctions on the *possibility* that it *might* have eventually prevailed against Plaintiffs had it not spoliated evidence.

### 4. Attorney Fees

Finally, BCT contends that it is too harsh to award both attorney's fees and terminating sanctions. Yet, Rule 37 expressly contemplates ordering payment of expenses *and* judgment against "the disobedient party,"[16] based on the recognition that merely awarding attorney's fees or a terminating sanction may not be enough in the interests of justice.

The discovery abuses in this case were egregious. Court orders were disobeyed, documents were intentionally and irretrievably destroyed, efforts were made to erase evidence of the destruction, and BCT employees lied under oath. Were the court to ignore such behavior, it could not

---

[16] Fed. R. Civ. P. 37(b)(2)(A)(v)–(vi), (C) (stating, "[i]nstead of or in additional to the orders above, the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure.").

"administer orderly justice, and the result would be chaos."[17] Moreover, a lesser sanction would fail to have a deterrent effect given the egregiousness of BCT's actions. "One who anticipates that compliance with discovery rules and the resulting production of damning evidence will produce an adverse judgment, will not likely be deterred from destroying that decisive evidence by any sanction less than the adverse judgment [it] is tempted to thus evade."[18] Willful spoliation of evidence deserves the harshest sanctions because it is antithetical to our system of justice. The evidence is sufficient to show such willfulness here. The court therefore concludes both attorney's fees and terminating sanctions are appropriate in this case.

## II. OTHER ISSUES

### A. MSouth Equity Partners

In a footnote, Judge Alba noted that MSouth Equity Partners ("MSouth") acquired BCT in July 2009.[19] He then collectively referred to MSouth and BCT as BCT. Because MSouth has not been named as a defendant in this matter, BCT asks the court to clarify that any ruling is only against BCT and not MSouth. The court agrees that such a clarification must be made. Accordingly, the court expressly states that its ruling is limited to BCT and does not apply to MSouth.

### B. Perjury

Because certain individuals lied under oath, Judge Alba recommends that his matter be referred to the United States Attorney's Office for investigation. The court adopts that recommendation.

---

[17] *Ehrenhaus*, 965 F.2d at 921 (quotation marks and citation omitted).

[18] *Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462, 465 (W.D. Tex. 2006).

[19] Report and Recommendation, 3 n.1 (Dkt. No. 284).

**CONCLUSION**

For the reasons stated above, the court APPROVES AND ADOPTS Judge Alba's report and recommendation in its entirety.[20] Accordingly, the court strikes BCT's answer, dismisses BCT's counterclaims, and enters default judgment as to liability in Plaintiffs' favor. In so ruling, however, the court expressly notes that this ruling only applies to BCT and not to MSouth. The Clerk of the Court is directed to send a copy of this Order, along with the Report and Recommendation, to the Acting United States Attorney for the District of Utah for such action as she deems is appropriate.

SO ORDERED this 15th day of February, 2011.

BY THE COURT:

Clark Waddoups
United States District Judge

[20] Dkt. No. 284.